**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRANDY ACALEY, individually, and on behalf of similarly situated individuals,<br><br>    Plaintiff,<br><br> v.<br><br>ECOATM, LLC,<br><br>    Defendant. | Case No. 1:21-cv-00792<br><br>Honorable Jorge L. Alonso |

**DEFENDANT ECOATM, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, OR IN THE ALTERNATIVE, STAY CLAIMS**

## TABLE OF CONTENTS

Page

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 1 |
| | A. | The Parties | 1 |
| | B. | The Kiosk User Flow | 2 |
| | C. | The Arbitration Agreement In ecoATM's Terms & Conditions | 4 |
| | D. | Plaintiff's Agreement to Arbitrate Her Claims | 6 |
| III. | ARGUMENT | | 6 |
| | A. | Plaintiff entered into an arbitration agreement with ecoATM. | 7 |
| | B. | The arbitration agreement is not unconscionable. | 9 |
| | C. | Plaintiff's claims are within the scope of the arbitration agreement. | 11 |
| | D. | The Court should dismiss the action in favor of arbitration or, in the alternative, stay this action pending arbitration. | 12 |
| IV. | CONCLUSION | | 13 |

## TABLE OF AUTHORITIES

Page

**CASES**

*Acaley v. Vimeo, Inc.*,
　464 F. Supp. 3d 959 (N.D. Ill. 2020), *appeal filed*, No. 20-2047 (7th Cir. June
　18, 2020) ...................................................................................................................................7

*AT&T Mobility LLC v. Concepcion*,
　563 U.S. 333 (2011)............................................................................................................6, 11

*Blocker v. U.S. Express Enters., Inc.*,
　No. 20-cv-01633, 2021 WL 825610 (N.D. Ill. Mar. 4, 2021) ...................................................13

*Brown v. Luxottica Rental N. Am. Inc.*,
　No. 09 C 7816, 2010 WL 3893820 (N.D. Ill. Sept. 29, 2010)...................................................10

*Carbajal v. H & R Block Tax Servs., Inc.*,
　372 F.3d 903 (7th Cir. 2004) .....................................................................................................12

*CK Witco Corp. v. Paper Allied Indus.*,
　272 F.3d 419 (7th Cir. 2001) .....................................................................................................12

*Corrigan v. Domestic Linen Supply Co.*,
　No. 12 C 0575, 2012 WL 2977262 (N.D. Ill. July 20, 2012) ....................................................11

*Davis v. Fenton*,
　26 F. Supp. 3d 727 (N.D. Ill. 2014) ......................................................................................9, 10

*Edmundson v. Amazon.Com, Inc.*,
　No. 19 C 5835, 2020 WL 5819870 (N.D. Ill. Sept. 30, 2020)...................................................10

*Faulkenberg v. CB Tax Franchise Sys.*,
　LP, 637 F.3d 801 (7th Cir. 2011)............................................................................................7, 9

*First Options of Chi., Inc. v. Kaplan*,
　514 U.S. 938 (1995)................................................................................................................7, 9

*Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*,
　No. 17 CV 1542, 2018 WL 2933608 (N.D. Ill. June 12, 2018)..............................................6, 8

*G&G Closed Circuit Events, LLC v. Castillo.*,
　No. 14-CV-02073, 2017 WL 1079241 (N.D. Ill. Mar. 22, 2017)..............................................10

*Gore v. Allitel Commc'ns, LLC*,
　666 F.3d 1027 (7th Cir. 2012) ...............................................................................................7, 12

*Gorny v. Wayfair Inc.*,
   No. 18 C 8259, 2019 WL 2409595 (N.D. Ill. June 7, 2019) ...................................................... 7

*Hanover Ins. Co. v. N. Bldg. Co.*,
   751 F.3d 788 (7th Cir. 2014) .................................................................................................... 9

*Hubbert v. Dell Corp.*,
   359 Ill. App. 3d 976 (2005) ...................................................................................................... 8

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
   Nos. 18-cv-864, 19-cv-1412, 2020 WL 832365 (N.D. Ill. Feb. 20, 2020) ............................... 11

*Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*,
   No. 04 C 1190, 2007 WL 951943 (N.D. Ill. Mar. 27, 2007) .................................................. 13

*Johnson v. Uber Techs., Inc.*,
   No. 16 C 5468, 2018 WL 4503938 (N.D. Ill. Sept. 20, 2018) .................................................. 8

*Kinkel v. Cingular Wireless LLC*,
   223 Ill. 2d 1 (2006) ................................................................................................................... 9

*Miracle-Pond v. Shutterfly, Inc.*,
   No. 19 cv 04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020) ........................................... 6, 8

*Mitchell v. Verizon Wireless*,
   No. 05 C 511, 2006 WL 862879 (N.D. Ill. Mar. 31, 2006) ...................................................... 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .................................................................................................................... 12

*NewNet Commc'n Techs., LLC v. VI E-Cell Tropical Telecom, Ltd.*,
   85 F. Supp. 3d 988 (N.D. Ill. 2015) ......................................................................................... 9

*Phoenix Ins. Co. v. Rosen*,
   242 Ill. 2d 48 (2001) ............................................................................................................... 10

*Rauh v. Rockford Prods. Corp.*,
   143 Ill. 2d 377 (1991) ............................................................................................................. 11

*Sgouros v. TransUnion Corp.*,
   817 F.3d 1029 (7th Cir. 2016) .................................................................................................. 7

*Sharif v. Wellness Int'l Network, Ltd.*,
   376 F.3d 720 (7th Cir. 2004) .................................................................................................... 1

*Sherman v. AT&T, Inc.*,
   No. 11 C 5857, 2012 WL 1021823 (N.D. Ill. Mar. 26, 2012) .................................................. 8

*Soucy v. Cap. Mgmt. Servs., L.P.*,
   No. 14 C 5935, 2015 WL 404632 (N.D. Ill. Jan. 29, 2015) ................................................. 12, 13

*Tinder v. Pinkerton Sec.*,
   305 F.3d 728 (7th Cir. 2002) ........................................................................................................ 2

*Tortoriello v. Gerald Nissan of N. Aurora, Inc.*,
   379 Ill. App. 3d 214 (2008) ..................................................................................................... 9, 10

*Van Tassell v. United Mktg. Grp., LLC*,
   795 F. Supp. 2d 770 (N.D. Ill. 2011) ......................................................................................... 7, 8

*Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*,
   51 F. Supp. 3d 713 (N.D. Ill. 2014) ............................................................................................. 11

*Wallace v. Grubhub Holdings Inc.*,
   No. 18 C 4538, 2019 WL 1399986 (N.D. Ill. Mar. 28, 2019), *aff'd*, 970 F.3d
   798 (7th Cir. 2020) ....................................................................................................................... 13

*Williams v. Planet Fitness, Inc.*,
   No. 20 CV 3335, 2021 WL 1165101 (N.D. Ill. Mar. 26, 2021) ................................................. 10

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
   466 F.3d 577 (7th Cir. 2006) ......................................................................................................... 6

**STATUTES**

9 U.S.C. § 2 ........................................................................................................................................ 6

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* ............................................................. passim

Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* ..................... 1, 2, 7, 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 ............................................................................................................................. 11

Fed. R. Civ. P. 12 ................................................................................................................ 1, 2, 12, 13

JAMS Comprehensive Arbitration Rules & Procedures, *available at*
   https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11; .................................... 11

## I. INTRODUCTION

Plaintiff Brandy Acaley ("Plaintiff") purports to bring this class action against ecoATM, LLC ("ecoATM") for alleged violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Her claims would fail if adjudicated before this Court because ecoATM has not violated BIPA, nor does Plaintiff plausibly allege that ecoATM has violated BIPA.[1] However, this case does not belong in court. Plaintiff has expressly agreed on multiple occasions to arbitrate her claims against ecoATM through individual, non-class arbitration. Pursuant to Rule 12(b)(3) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, ecoATM respectfully requests that the Court dismiss Plaintiff's Complaint in favor of arbitration proceedings on an individual basis or, in the alternative, stay this action pending the completion of individual arbitration.

## II. BACKGROUND

### A. The Parties

Defendant ecoATM "develops, manufactures, and maintains self-serve kiosks used to recycle smart devices" and "has installed thousands of these kiosks in stores across the United States." Compl. ¶ 1. These kiosks provide an easy, quick, and convenient way for consumers to trade in their mobile devices; further an environmental cause through recycling; and simultaneously allow ecoATM to participate in the "secondary device-sale market." *Id.* ¶ 37.

---

[1] This Motion is being filed simultaneously with a Motion to Dismiss pursuant to Rule 12(b)(6). In filing a Motion to Dismiss, ecoATM does not waive its right to arbitrate. *See Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) ("[I]t is well-established that a party does not waive its right to arbitration merely by filing a motion to dismiss."). Moreover, the Motion to Compel Arbitration should be resolved prior to addressing the Motion to Dismiss. *See id.* ("An application for arbitration . . . requests the district court to refrain from further action in a suit pending arbitration, and requires the court to first determine whether there is a written agreement to arbitrate between the parties, and then whether any of the issues raised are within the reach of the agreement.") (quoting *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001)).

Plaintiff alleges that she visited ecoATM's kiosks as early as 2016[2] and that she has "used the kiosk[s] multiple times during the past year including twice in June 2020 and again in November 2020, at different kiosk locations located inside Walmart stores in Rockford, IL." *Id.* ¶ 44. She states, without providing any supporting factual allegations, that she was required to provide "scan[s] of her facial geometry" in order to use the kiosks, *id.* ¶¶ 45-46, that ecoATM subsequently "stored [her] biometric data in its database(s)," *id.* ¶ 47, and that ecoATM "disclosed, redisclosed, or otherwise disseminated" her biometric data without first obtaining consent, *id.* ¶ 92. Based on these conclusory allegations, Plaintiff brings three claims for violations of BIPA. First, Plaintiff alleges that ecoATM violated BIPA Section 15(a) by not providing a "publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information." Compl. ¶¶ 67-75. Second, Plaintiff claims ecoATM violated BIPA Section 15(b) because it "collected, used, and stored Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release" required by BIPA. Compl. ¶¶ 76-85. Third, Plaintiff asserts that ecoATM violated BIPA Section 15(d) by "disclosing, redisclosing, or otherwise disseminating Plaintiff's biometric identifiers and biometric information without first obtaining consent." Compl. ¶¶ 86-94.

**B. The Kiosk User Flow**

Before a user may recycle a device using an ecoATM kiosk, the user must complete a number of steps that are displayed on ecoATM's self-serve kiosk. *See* Declaration of Brian Fahey ("Fahey Decl.") ¶ 6 (declaration attached hereto as Exhibit 1).[3] One step in this process, which is depicted on the following page, requires the user to click a button indicating that they

---

[2] Notably, the fact that Plaintiff allegedly first used the ecoATM kiosk in 2016 means that her BIPA claims are time-barred. *See* Defendant ecoATM LLC's Memorandum of Law In Support of Motion to Dismiss at 8-11.

[3] On a motion to compel arbitration under the FAA or ruling on a Rule 12(b)(3) motion to dismiss for improper venue, a district court may consider documents outside of and integral to the pleadings, such as the agreements giving rise to the alleged obligation to arbitrate. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735-36 (7th Cir. 2002).

"have read and agree to the Terms & Conditions" before they will be able to recycle a device through the kiosk.



*Id.* ¶ 7, Ex. E (attaching true and correct representative screenshot of the step as it currently appears, which is the exact screen that users would have seen in November 2020 and substantially identical to the screen that users would have seen since at least 2016).

As depicted above, before a user is permitted to recycle a device, the phrase "Check out the fine print" is displayed in large, bold text on the kiosk screen. Immediately below this is the phrase "Please also review the ecoATM Terms & Conditions and Privacy Policy," along with buttons that the user can click to access the Terms & Conditions and Privacy Policy. If a user clicks to review the Terms and Conditions, she may take as long as necessary to review the Terms (after a period of inactivity, the kiosk will ask if the user needs more time), and may request a copy of the Terms by clicking on a button that says "Send Me a Copy." *Id.* ¶ 8. Finally, on the right-hand side of the screen is a button next to the phrase "I have read and agree to the Terms & Conditions." This button must be clicked before the words "I AGREE" will appear, as depicted on the following page:

3



Only after the user has clicked to manifest assent to the Terms & Conditions and further clicked "I Agree" will that user be able to move forward in the recycling process (otherwise, the user can exit the process by clicking "RETURN MY DEVICE, I CHANGED MY MIND" in the bottom left-hand corner of the screen). *Id.* ¶ 10. Thus, any user who recycles a device through an ecoATM kiosk must first click a button indicating that they have read and agree to ecoATM's Terms & Conditions ("Terms").

C. The Arbitration Agreement In ecoATM's Terms & Conditions

At all times relevant to the allegations in the Complaint (namely, at all times since at least 2016), the Terms displayed on the screen of an ecoATM kiosk have matched those available at https://www.ecoatm.com/terms-and-conditions. *See* Fahey Decl. ¶¶ 2-5, 8, Exs. A-D, Further, at all times since at least 2016, the following provisions have been included in the Terms.

First, in the very first sentence, ecoATM's Terms make clear that users are agreeing to a contract that contains an arbitration provision:

> PLEASE READ THESE TERMS AND CONDITIONS CAREFULLY, INCLUDING THE MANDATORY

4

> ARBITRATION PROVISION WHICH REQUIRES THAT DISPUTES ARE RESOLVED BY FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL AND NOT A CLASS-WIDE OR CONSOLIDATED BASIS.

*Id.* ¶¶ 2-5, Exs. A-D.

Second, ecoATM's Terms contain a section entitled "Arbitration; Applicable Law and Venue." This section again starts with an all caps admonition:

> PLEASE READ THE FOLLOWING PARAGRAPH CAREFULLY BECAUSE IT REQUIRES YOU TO ARBITRATE DISPUTES WITH ECOATM AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM US.

The section then goes on to provide, in relevant part:

> You and ecoATM agree to arbitrate any dispute arising from this Agreement or your use of the Services, except that you and ecoATM are not required to arbitrate any dispute in which either party seeks equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets, or patents. ARBITRATION PREVENTS YOU FROM SUING IN COURT OR FROM HAVING A JURY TRIAL.

> You and ecoATM agree . . . (b) that any arbitration will occur in the County of San Diego, California; (c) that arbitration will be conducted confidentially by a single arbitrator in accordance with the rules of JAMS; and (d) that the state or federal courts in the County of San Diego, California have exclusive jurisdiction over any appeals of an arbitration award and over any suit between the parties not subject to arbitration.

Finally, the section concludes:

> Any dispute between the parties will be governed by this Agreement and the laws of the State of California and applicable United States law, without giving effect to any conflict of laws principles that may provide for the application of the law of another jurisdiction. WHETHER THE DISPUTE IS HEARD IN ARBITRATION OR IN COURT, YOU AND ECOATM WILL NOT COMMENCE AGAINST THE OTHER A CLASS ACTION, CLASS ARBITRATION OR OTHER REPRESENTATIVE ACTION OR PROCEEDING.

*Id.*

**D. Plaintiff's Agreement to Arbitrate Her Claims**

Plaintiff alleges that she has used ecoATM kiosks multiple times, most recently in November 2020. Compl. ¶ 44. Each time she did so, she would have been required to click the above button to indicate that she "read and agree[d] to the Terms & Conditions." Fahey Decl. ¶¶ 7, 10, Ex. E. By their express language, the Terms thus "govern the relationship between" Plaintiff and ecoATM "with respect to [her] use of [ecoATM] kiosks, websites, and other online or mobile services or applications (collectively, the 'Services')." *Id.* ¶¶ 2-5, Exs. A-D.[4]

Accordingly, Plaintiff cannot pursue this lawsuit, and must instead arbitrate her individual claims against ecoATM arising out of her use of the Services offered by ecoATM.

### III. ARGUMENT

Under the Federal Arbitration Act ("FAA"), an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("We have described this provision as reflecting both a liberal federal policy favoring arbitration, . . . and the fundamental principle that arbitration is a matter of contract[.]") (quotation marks and citations omitted). When deciding a motion to compel arbitration under the FAA, the district court must only determine whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006); *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, *3 (N.D. Ill. June 12, 2018). Questions

---

[4] Plaintiff agreed to the Terms in effect each time she allegedly used an ecoATM kiosk to recycle a device, including if she used ecoATM kiosks in 2016 and June 2020 as alleged in the Complaint. *See* Compl. ¶ 44. The Terms have included the same arbitration provision since at least 2016. Fahey Decl. ¶¶ 2-5, Exs. A-D. However, even if Plaintiff were to dispute that she agreed to the Terms prior to 2020, her continued use of the ecoATM kiosks would indicate her acceptance of the Terms and thereby subject all of her claims against ecoATM to arbitration. *Id.*; *see Miracle-Pond v. Shutterfly, Inc.*, No. 19 cv 04722, 2020 WL 2513099, *5-7 (N.D. Ill. May 15, 2020) (enforcing arbitration clause because Shutterfly's terms expressly provided "right to unilaterally modify its terms" and plaintiff's "continued use of Shutterfly products constitutes acceptance of the modified terms," which required arbitration).

regarding the validity, enforceability, and scope of an arbitration agreement are generally governed by state law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Gore v. Allitel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012).[5]

**A. Plaintiff entered into an arbitration agreement with ecoATM**.

Plaintiff entered into an arbitration agreement with ecoATM, including most recently when she clicked a button to accept ecoATM's Terms & Conditions in November 2020.

In determining whether parties have agreed to arbitrate, "courts . . . apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc.*, 514 U.S. at 944. Contracts formed in electronic transactions, such as "clickwrap agreements," are enforceable just like any other contract so long as there is "a 'meeting of the minds' and a manifestation of 'mutual assent.'" *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 789-90 (N.D. Ill. 2011). Accordingly, courts have generally enforced "clickwrap agreements" like the one at issue here "as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033-34 (7th Cir. 2016) (collecting cases); *see also Acaley*, 464 F. Supp. 3d at 965 ("Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement."). It does not matter if the terms to which the user agrees are incorporated via hyperlink, *see, e.g.*, *Gorny v. Wayfair Inc.*, No. 18 C 8259, 2019 WL 2409595, at *1, *5-6 (N.D. Ill. June 7, 2019) (enforcing arbitration agreement presented to plaintiff website who was told before clicking "Place Your Order" button that "by continuing to the site, you agree to the updated Terms of Use and Privacy Policy"), nor does it

---

[5] Plaintiff's BIPA claims are asserted under Illinois law, but ecoATM's Terms specify that "[a]ny dispute between the parties will be governed by this Agreement and the laws of the State of California and applicable United States law, without giving effect to any conflict of laws principles that may provide for the application of the law of another jurisdiction." Fahey Decl. ¶¶ 2-5, Exs. A-D. Because there is no "substantive difference between the *relevant* governing standards in Illinois and California," *Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 965 (N.D. Ill. 2020), *appeal filed*, No. 20-2047 (7th Cir. June 18, 2020), ecoATM primarily cites Illinois and federal law, though the result here would be the same under California law.

7

matter whether a user *actually* clicks that link or actually reads the linked material, *see Faulkenberg v. CB Tax Franchise Sys.*, LP, 637 F.3d 801, 809 (7th Cir. 2011) ("Ignorance of the contract's arbitration provision is no defense if they failed to read the contract before signing."). Rather, in "regularly uphold[ing]" the validity of "clickwrap" agreements, *Van Tassell*, 795 F. Supp. 2d at 790, courts have concluded that it is sufficient to demonstrate that an individual "had the opportunity to review the terms of the . . . agreement" before clicking to assent to that agreement. *Friends for Health: Supporting N. Shore Health Ctr.*, 2018 WL 2933608, at *5; *see also Sherman v. AT&T, Inc.*, No. 11 C 5857, 2012 WL 1021823, at *3 (N.D. Ill. Mar. 26, 2012) ("The clickwrap process of checking a box next to hyperlinked terms generally provides adequate notice.").

ecoATM's self-serve kiosks contain a clear and conspicuous statement that a user must "read and agree to the Terms & Conditions" in order to use the services, and will not allow a user to recycle a device unless they first click a box to affirm that they "have read and agree to the Terms & Conditions." Here, because Plaintiff recycled devices through ecoATM kiosks on multiple occasions, Compl. ¶ 44, she necessarily also clicked the box to affirm that she "read and agree[d] to the Terms & Conditions" on multiple occasions—including most recently on November 3, 2020. Fahey Decl. ¶ 12, Ex. F. Moreover, the Terms were made readily available to Plaintiff via a large button just to the left of the button that Plaintiff affirmatively clicked. Thus, Plaintiff agreed to and is bound by ecoATM's Terms, including the arbitration agreement that is twice called out in all-caps lettering in the Terms. *See, e.g.*, *Miracle-Pond*, 2020 WL 2513099, at *1 (enforcing an arbitration provision where plaintiff clicked an "Accept" button that was followed by the text: "By tapping 'Accept,' you agree to use the Shutterfly for Android software and the associated Shutterfly services in accordance with Shutterfly's Terms of Use."); *Johnson v. Uber Techs., Inc.*, No. 16 C 5468, 2018 WL 4503938, at *4-5 (N.D. Ill. Sept. 20, 2018) (enforcing arbitration agreement where plaintiff affirmatively and voluntarily clicked a button appearing next to the Privacy Policy and Terms & Conditions); *Hubbert v. Dell Corp.*, 359 Ill.

8

App. 3d 976, 984 (2005) (holding that "[b]ecause the 'Terms and Conditions of Sale' were a part of the online contract . . . , [plaintiffs] were bound by the [terms and] . . . arbitration clause").

**B. The arbitration agreement is not unconscionable**.

Both federal and Illinois law reflect a "strong" policy in favor of "enforcing arbitration agreements." *NewNet Commc'n Techs., LLC v. VI E-Cell Tropical Telecom, Ltd.*, 85 F. Supp. 3d 988, 994 (N.D. Ill. 2015); *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill. App. 3d 214, 239 (2008). To that end, "[c]ourts are to uphold and enforce applicable arbitration agreements according to their terms unless they are invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Davis v. Fenton*, 26 F. Supp. 3d 727, 735 (N.D. Ill. 2014) (quoting *AT&T Mobility LLC*, 563 U.S. at 339).

The Complaint does not suggest that Plaintiffs' use of ecoATM kiosks involved fraud or duress. And although the Complaint does not mention ecoATM's Terms at all, *see Mitchell v. Verizon Wireless,* No. 05 C 511, 2006 WL 862879, at *2 (N.D. Ill. Mar. 31, 2006) (recognizing that a plaintiff bears the burden to prove unconscionability), the nature of the user flow and the content of the Terms prove that they are not procedurally or substantively unconscionable, *see Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 794 (7th Cir. 2014) ("In Illinois, a contract is procedurally unconscionable if an impropriety in the process of forming the contract deprived a party of a meaningful choice. On the other hand, a contract is substantively unconscionable when a clause or term in the contract is totally one-sided or harsh.") (citations omitted).

*First,* there is no procedural unconscionability because the arbitration provision "is [not] so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware [s]he was agreeing to it." *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 22 (2006) (citation omitted). The Terms containing the arbitration agreement were prominently called out on the screen of the self-serve kiosk, which was a required process in order to use ecoATM's services. Fahey Decl. ¶¶ 6-7, Ex. E; *Davis*, 26 F. Supp. 3d at 738 (rejecting plaintiff's argument "that no one informed her that there was an arbitration clause in the agreement or what that arbitration clause meant."); *see also Faulkenberg*, 637 F.3d at 809 ("Ignorance of the contract's arbitration

9

provision is no defense if [a plaintiff] failed to read the contract before signing."). The first paragraph of the Terms contains an all-caps admonition that an arbitration provision and class action waiver are included. Fahey Decl. ¶¶ 2-5, Exs. A-D. The arbitration agreement certainly is not "hidden in a maze of fine print." *See Tortoriello*, 379 Ill. App. 3d at 233; *see also Davis*, 26 F. Supp. 3d at 738 (placement, font size, and typeface of arbitration clause did not make it procedurally unconscionable); *Brown v. Luxottica Rental N. Am. Inc.,* No. 09 C 7816, 2010 WL 3893820, at *3 (N.D. Ill. Sept. 29, 2010) (arbitration provisions in the middle of a 51-page document were neither hidden nor buried so as to generate procedural unconscionability). Moreover, Plaintiff had unlimited time to review the arbitration agreement before deciding whether to agree to it and could also review the Terms at any time through ecoATM's website. Fahey Decl. ¶¶ 7, 8, Ex. E.

  ***Second,*** the arbitration provision is not substantively unconscionable because it is not "so one-sided as to oppress or unfairly surprise an innocent party." *Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48, 60 (2001). Both ecoATM and its users are required to arbitrate their claims, so the arbitration agreement is bilateral.[6] Fahey Decl. ¶¶ 2-5, Exs. A-D. Furthermore, ecoATM's arbitration provision incorporates the rules of a single, neutral party—Judicial Arbitration and Mediation Services ("JAMS")—by reference. *Id.* Under settled law, the JAMS arbitration procedures are not substantively unconscionable. *See G&G Closed Circuit Events, LLC v. Castillo.*, No. 14-CV-02073, 2017 WL 1079241, at *9 (N.D. Ill. Mar. 22, 2017) (rejecting argument that JAMS Rules are substantively unconscionable); *see also Williams v. Planet Fitness, Inc.*, No. 20 CV 3335, 2021 WL 1165101, *5 (N.D. Ill. Mar. 26, 2021) ("Because AAA rules and procedures are easily accessible—for example, through a simple internet search—the membership agreement's reference to the AAA rules precludes a finding of substantive

---

[6] The only exception to the arbitration requirement is that both ecoATM and its users are not required to arbitrate "any dispute in which either party seeks equitable and other relief for the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets, or patents." Fahey Decl. ¶¶ 2-5, Exs. A-D. This exception, which is not applicable in this case, is also bilateral.

unconscionability."). The inclusion of a class action waiver is also of no consequence, as such a waiver, by itself, does not render an agreement "per se unconscionable." *See Edmundson v. Amazon.com, Inc.*, No. 19 C 5835, 2020 WL 5819870, *2 (N.D. Ill. Sept. 30, 2020); *see also AT&T Mobility LLC*, 563 U.S. at 352 (holding FAA preempted state precedent that class action waivers in arbitration agreements were unconscionable).

Because the arbitration agreement is neither procedurally nor substantively unconscionable, the Court must enforce it.

**C. Plaintiff's claims are within the scope of the arbitration agreement**.

"In construing instruments of submission to arbitration, courts always give as large a construction to them, as the words of the instrument and the intentions of the parties, drawn from their expressions, will warrant." *Rauh v. Rockford Prods. Corp.*, 143 Ill. 2d 377, 387 (1991) (citations omitted).

Whether Plaintiff's claims fall within the scope of the arbitration agreement is itself an issue for the arbitrator to decide. *See Corrigan v. Domestic Linen Supply Co.*, No. 12 C 0575, 2012 WL 2977262, at *2 (N.D. Ill. July 20, 2012) ("[W]hen parties agree in a valid arbitration agreement that [an alternative dispute resolution service's] rules apply, an arbitrator should decide the scope of arbitrability.") (citation omitted). The Terms' arbitration provision specifies that "arbitration will be conducted confidentially by a single arbitrator in accordance with the rules of JAMS." Fahey Decl. ¶¶ 2-5, Exs. A-D. The rules of JAMS, in turn, provide that "disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." Rule 11(b), JAMS Comprehensive Arbitration Rules & Procedures, *available at* https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11; *see also In re Dealer Mgmt. Sys. Antitrust Litig.*, Nos. 18-cv-864, 19-cv-1412, 2020 WL 832365, *6 (N.D. Ill. Feb. 20, 2020) (collecting cases requiring an arbitrator to decide the scope of arbitrability where the JAMS rules applied to the arbitration agreement). Thus, the parties agreed to delegate to the arbitrator questions regarding the scope of the arbitration agreement. *See Wal-*

11

*Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 719 (N.D. Ill. 2014) ("[W]here the parties agree to arbitration pursuant to the rules of the [AAA], the parties incorporate the AAA's rules into the arbitration agreement.") (citation omitted).

Nevertheless, were this Court to determine the scope of arbitration, Plaintiff's claims are plainly within the broad arbitration provision.

Because the FAA reflects a "liberal federal policy favoring arbitration agreements," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *CK Witco Corp. v. Paper Allied Indus.*, 272 F.3d 419, 421-22 (7th Cir. 2001) (cleaned up). Here, the arbitration clause by its terms covers "any dispute arising from this Agreement or your use of the Services," defined to include "use of [ecoATM] kiosks." Fahey Decl. ¶¶ 2-5, Exs. A-D. That plainly covers Plaintiff's BIPA claims, which arise out of and relate to her use of ecoATM's kiosks and thus its Services. Indeed, in analyzing a similar provision requiring arbitration of "any claim or dispute . . . relating to the Agreements," the Seventh Circuit observed that "[i]t would be hard to draft a broader clause." *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 904-05 (7th Cir. 2004); *see also Gore*, 666 F.3d at 1036 ("Given our broad reading of 'arising out of and relating to,' we are confident that these claims also fall within the scope of the arbitration clause.").

Thus, even if this Court were to determine the scope of arbitration, Plaintiff's claims fall squarely within the broad arbitration language to which Plaintiff agreed.

**D. The Court should dismiss the action in favor of arbitration or, in the alternative, stay this action pending arbitration**.

Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(3) for improper venue because all Plaintiff's BIPA claims are subject to arbitration. *See Soucy v. Cap. Mgmt. Servs.,*

*L.P.*, No. 14 C 5935, 2015 WL 404632, at *6 (N.D. Ill. Jan. 29, 2015) ("[W]hen all of the claims are subject to a valid and enforceable arbitration agreement, retaining jurisdiction and staying the case serves little purpose and is a waste of judicial resources."). Dismissal is doubly appropriate here because the Terms of Service provide that "any arbitration will occur in the County of San Diego, California." *See* Fahey Decl. ¶¶ 2-5, Ex. A-D; *Blocker v. U.S. Express Enters., Inc.*, No. 20-cv-01633, 2021 WL 825610, at *4 (N.D. Ill. Mar. 4, 2021) ("[A] Rule 12(b)(3) motion to dismiss for improper venue is the proper procedure when the arbitration clause requires arbitration outside of the district court's district."). The Seventh Circuit has "repeatedly affirmed district courts' decisions dismissing suits where all of the claims must be arbitrated according to the agreement." *Soucy*, 2015 WL 404632, at *6; *see also Wallace v. Grubhub Holdings Inc.*, No. 18 C 4538, 2019 WL 1399986, at *6 (N.D. Ill. Mar. 28, 2019) (recognizing same), *aff'd*, 970 F.3d 798 (7th Cir. 2020). In the alternative, ecoATM respectfully asks the Court to stay the action pending arbitration of Plaintiff's individual claims. *See Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*, No. 04 C 1190, 2007 WL 951943, at *7 (N.D. Ill. Mar. 27, 2007) (granting motion to compel and staying proceedings pending arbitration).

## IV. CONCLUSION

For the foregoing reasons, ecoATM respectfully requests that this Court grant ecoATM's motion to compel arbitration and dismiss Plaintiff's claims pending arbitration of the claims on an individual, non-class basis. In the alternative, ecoATM requests that this Court stay Plaintiff's claims pending individual arbitration.

| | |
|---|---|
| Dated: April 21, 2021 | **PERKINS COIE LLP** |
| | By: */s/ Nicola C. Menaldo* |
| |     Nicola C. Menaldo (ARDC No. 6331225) |
| |     NMenaldo@perkinscoie.com |
| |     Attorney for Defendant |
| |     ecoATM, LLC. |

Debra R. Bernard (ARDC No. 6191217)
Calvin Cohen (ARDC No. 6334780)
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: (312) 324-8400
Facsimile: (312) 324-9400
DBernard@perkinscoie.com
CCohen@perkinscoie.com

Nicola C. Menaldo (ARDC No. 6331225)
Anna Mouw Thompson (*Pro Hac Vice*)
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
NMenaldo@perkinscoie.com
AnnaThompson@perkinscoie.com

## CERTIFICATE OF SERVICE

I hereby certify that, on April 21, 2021, a copy of the foregoing DEFENDANT ECOATM, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, OR IN THE ALTERNATIVE, STAY CLAIMS was served via the Court's ECF filing system to the following attorneys of record:

Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
STEPHAN ZOURAS, LLP
100 North Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
Firm ID: 43734

Attorneys for Plaintiff

/s/ Nicola C. Menaldo

15